UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re: Grand Jury )
)
)
) M.B.D. No. 09-10124
)
)
)
)
)
)

MEMORANDUM AND ORDER

WOLF, C.J.                                              April 23, 2009

Since April, 2008, this court has been responsible for matters relating to the grand juries in the District of Massachusetts. Government officials are prohibited from disclosing any matter occurring before a grand jury. See F. R. Cr. P. 6(e)(2)(B). Among other things, government officials may not disclose the identities of witnesses who appear before a grand jury. See In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1138, 1140 (D.C. Cir. 2006). A knowing violation of the duty to maintain the secrecy of matters occurring before a grand jury may be punished as a contempt of the court. See F. R. Cr. P. Rule 6(e)(7). "[C]ourts possess the inherent authority to initiate contempt proceedings. . . . " Young v. United States, 481 U.S. 787, 793 (1987). The court may appoint disinterested private counsel to investigate and prosecute contempt proceedings if doing so will best serve the interest of justice because the subjects of the investigation and potential prosecution are government officials. See In re Special Proceedings, 373 F.3d 37, 41-44 (1st Cir. 2004); F. R. Cr. P. 42(a)(2); Order, Docket No.

375, United States v. Stevens, Cr. No. 08-231 (EGS) (D.D.C. Apr. 7, 2009).

Attached is an April 16, 2009 Boston Globe article headlined "DeLeo's aid goes before US panel; Grand jury hears of Cognos bids; Lawmaker is also said to testify." It states, in part, that "Representative Lida Harkins, the assistant majority leader under [former Speaker of the House Salvatore] DiMasi also appeared before the grand jury, according to officials who did not want to be identified because the grand jury's proceedings are confidential." It appears that unidentified government officials have knowingly violated Rule 6(e). Therefore, the court is considering whether the interest of justice requires the appointment of a disinterested private attorney to investigate and, if justified, prosecute charges of contempt.

Accordingly, it is hereby ORDERED that the government shall, by April 30, 2009:

1. Submit to the court under seal:

    (a) The letter(s) required by Federal Rule of Criminal Procedure 6(e)(3)(B) identifying all persons to whom a disclosure has been made of matters occurring before the grand jury referenced in the attached April 16, 2009 Boston Globe article;

    (b) An affidavit stating whether the previously submitted list(s) of persons to whom such disclosure has been made is complete and, if not, identifying the additional persons to whom

2

disclosure was made; and

(c) An affidavit identifying the attorney(s) who discharged the duty, under Federal Rule of Criminal Procedure 6(e)(3)(B), to instruct those to whom disclosure of matters occurring before the grand jury were made of their obligation to maintain the secrecy of that information.

2. Submit for the public record an affidavit and supporting memorandum seeking to show cause why it is not in the interest of justice for the court to appoint disinterested private counsel to investigate and possibly prosecute criminal and/or civil contempt charges relating to the April 16, 2009 Boston Globe article.

_____
Chief United States District Judge



| | |
|---|---|
| Lisa White/CA01/01/USCOURTS<br>04/16/2009 09:12 AM | To  01CIRCml_MA District Judges, 01CIRCml_MA Magistrate Judges<br>cc<br>bcc<br>Subject  Boston Globe: DeLeo's aide goes before US panel |

Dear Judges,

Lisa White - US Courts Library

---

## DeLeo's aide goes before US panel
## Grand jury hears of Cognos bids; Lawmaker is also said to testify

By Andrea Estes, Globe Staff | April 16, 2009

House Speaker Robert A. DeLeo's chief of staff and a state representative with close ties to former speaker Salvatore F. DiMasi testified this week before a federal grand jury investigating the awarding of two multimillion-dollar state contracts to the software company Cognos, several officials confirmed yesterday.

James Eisenberg, who has served as DeLeo's chief of staff since the speaker chaired the House Ways and Means Committee, appeared before the grand jury on Tuesday after being subpoenaed by federal authorities. According to DeLeo spokesman Seth Gitell, Eisenberg was told by his lawyers that he is not a target of the probe and was subpoenaed primarily to produce records from the Ways and Means Committee.

Representative Lida Harkins, the assistant majority leader under DiMasi, also appeared before the grand jury, according to officials who did not want to be identified because the grand jury's proceedings are confidential.

Harkins, who represents Needham, declined to comment yesterday. Her name was mentioned in a state education department e-mail, obtained by the Globe last fall, which indicated she had contacted the department about a Cognos contract on DiMasi's behalf.

Gitell said that DeLeo's office is cooperating fully with the US attorney's office on the investigation, "including making members of the office available to investigators to provide information upon request.

"To avoid jeopardizing the investigation, the speaker's office will not comment on the subject matter of the investigation or the specific requests that have been received," Gitell said.

Investigators have been looking into why Cognos or its independent sales agent, Joseph Lally, paid huge sums of money to close friends and business associates of DiMasi as the company was seeking the two contracts. According to an investigation by state Inspector General Gregory Sullivan, Cognos paid DiMasi's law associate Steven Topazio a $5,000-a-month retainer for two years. Lally paid

DiMasi's former accountant Richard Vitale $600,000 over two years and $300,000 to Cognos's lobbyist and DiMasi's friend, Richard McDonough.

Both Cognos deals - a $13 million contract for statewide performance management software and a $4.5 million contract for the education department - required funding by the House Ways and Means Committee. The $13 million contract, which has since been canceled by the state, was paid for through an emergency bond bill, which was approved by the Legislature one week after it was filed in March 2007.

The 2006 education contract was financed through a Ways and Means amendment. The state education department had previously awarded Cognos a contract for a $1 million pilot program in October 2005. The additional money was needed to fund an expansion of the data warehouse project, which collects and tracks data about students, teachers, and finances across the state. That funding came through an amendment filed in April 2006 by then-Representative Robert Coughlin. DiMasi told fellow legislators the amendment was "a priority," according to a state official with direct knowledge of the budget negotiations.

Eisenberg, who has worked for DeLeo since 1999, might have been able to tell investigators whether DiMasi or any of his staffers directed the House Ways and Means Committee to approve the funding. DeLeo became speaker when DiMasi resigned in late January .

In late 2005, as the education department was about to award the software contract for the pilot program, then-education commissioner David Driscoll suggested in an e-mail that Harkins, a trusted DiMasi lieutenant, called him to convey the speaker's interest in the Cognos contract.

"Now - his interest was in making sure we did not pick a bidder he does not have confidence in," wrote Driscoll in October 2005. "He had Lida Harkins call me twice."

Harkins said last fall that she didn't remember placing the calls. If she did call, she said, it was because she - as a former education chairwoman - was pressing the department to find a uniform way to collect data. She said she knew nothing about the contract.

DiMasi, through a spokesman, has denied asking anyone to give contracts to Cognos or approve their funding.

In January, federal investigators issued a general subpoena to the House of Representatives for "all documents and all objects" related to the two contracts, according to DeLeo's office.

Last November, investigators from the state attorney general's office questioned another DeLeo aide, attorney James Kennedy, who served as general counsel to the Ways and Means Committee. He is now general counsel in the speaker's office.

The state investigators were looking into the activities of Vitale, who secretly worked for a group of Massachusetts ticket brokers in 2007. They asked Kennedy about legislation that was approved by the House in October 2007, which removed the state's cap on ticket prices.

The bill had been rewritten after a meeting in the speaker's office, with DiMasi present, and emerged the next day from the Ways and Means Committee.

The bill later died in the Senate.

Vitale was indicted last December and charged with multiple lobbying and campaign finance violations.

A spokesman for US Attorney Michael Sullivan yesterday declined comment on the investigation. ■

© Copyright 2009 The New York Times Company